FRANK PERRI, CONTESTANT, v. JACOB B. KISSELBACH, INCUMBENT.

Superior Court of New Jersey
Law Division

Decided December 15, 1959.

*Mr. Irving I. Jacobs,* attorney for the contestant.

*Mr. Irving A. Lilienfeld (Messrs. Lilienfeld and Lilienfeld)* attorneys for the incumbent.

CAFIERO, J. S. C.  I find as a fact that at the last general election in November 1959, Mr. Henry Haker and Mr. Stephen Parker were patients in the Atlantic County Hospital for Tubercular Diseases at Northfield, suffering from pulmonary tuberculosis; that each of them was admitted in 1957 because of such affliction and for the purpose of receiving treatment which has been and is still being given.

Mr. Parker resided in the City of Atlantic City when he was admitted; and Mr. Haker resided with his then employer in the City of Linwood, which property, however, is no longer in existence and is now the site of the high school building.

Mr. Haker's condition is still active but is not infectious, and there was testimony that he could be discharged if suitable accommodations were available to him.  However, he has not been discharged.  He is a widower, 78 years of age, who in addition to his affliction is infirm and unable to care for himself.  A daughter, who recently married, maintains a home in the nearby city of Cardiff and has offered her father a room in her home, but he prefers to remain at the hospital declaring that it is the only home he has; that he gets three meals a day; that they take good care of him, giving him medicine; that his room is near the dining room and on the same floor; that he can't do much walking and is "all in" when he does.  He also testified that he often takes his meals in his room.  His daughter takes him to her home occasionally for several hours by calling for him at the hospital and then returning him.

He has registered from the hospital and has voted an absentee ballot at the 1958 general election and in the primary and general elections in 1959.

It is argued that these declarations and manifestations are sufficient to qualify him to vote from that address.

Counsel concedes that Mr. Parker may come within the rule laid down in *Brueckmann v. Frignoca*, 9 *N. J. Misc.* 128 (*Cir. Ct.* 1931), but contends that Mr. Haker's position is to be distinguished, so that he is a duly qualified voter.

I cannot agree. Mr. Haker is likewise a patient and the distinguishing features are insufficient to establish domicile for voting purposes. His stay at the hospital is of a temporary nature, for a specific purpose, *i. e.*, treatment and care for the disease for which he was admitted and for which he is permitted to remain. Although the medical director has indicated that he could be discharged, the fact remains that he has not been discharged and is still being treated. His status has not thereby changed and he has not established a domicile within the intendment of the Election Law.

*N. J. S. A.* 19:4–1 provides in part that:

"Every person possessing the qualifications required * * * and having none of the disqualifications * * * shall be entitled to vote in the polling place assigned to the election district in which he actually resides, and not elsewhere."

In *State v. Benny,* 20 *N. J.* 238 (1955), and the cases cited therein, it was held that:

"Domicile has been variously defined as the place where a person 'has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'"

On *page* 251 of 20 *N. J.* the court continued:

"It is everywhere conceded that a person can have only one true domicile, which is synonymous with the common understanding of the word 'home.' * * *

Residence, on the other hand, though parallel in many respects to domicile, is something quite different in that the elements of permanency, continuity, and kinship with the physical, cultural, social and political attributes which inhere in a 'home' according to our accepted understanding, are missing."

At *page* 255 of 20 *N. J.* the court made further reference to the permanency necessary, and also made some other significant observations when it stated that:

"A holding that a temporary or seasonal residence in this State is sufficient to satisfy the constitutional and statutory requirements,

even though continued intermittently over a period of time, would result in serious consequences. Responsible voting can be expected only where voters voting at the polls owe allegiance to the state and locality wherein they are domiciled and wherein they exercise their franchise. The necessary attributes of domicile, *i. e.*, sending children to local schools, being concerned with local problems, reading local newspapers, having knowledge of local needs and desires, and above all, having a genuine desire to accept the responsibilities incident to such status and make that 'home' a better place to live, all become important factors to be considered in obtaining reliable results from popular elective systems.

" 'The ballot in the hands of the qualified voter is the means by which he exercises his inalienable right to give consent as to how and by whom he chooses to be governed. The honesty, integrity and inviolability of that ballot must be maintained.' *State v. Fay*, 127 *N. J. L.* 77, 85 (*Sup. Ct.* 1941)."

None of these benefits or obligations are of any concern to a patient in a hospital whose primary, if not his sole, interest is to be cured or relieved of his suffering. Admission is at the instance of any resident desiring treatment, or by physician referral (*N. J. S. A.* 30 :9–54(*a*)), and an admittee who willfully violates rules, or is found to be recovered, shall be temporarily discharged by the superintendent (*N. J. S. A.* 30 :9–53), who shall report the same to the board of governors of the hospital. The medical superintendent is invested with custody and control of every person admitted and may restrain and discipline any patient. (*N. J. S. A.* 30 :9–54(*g*).)

Mr. Haker could not leave the hospital for more than 24 hours without first obtaining permission; and, although ambulatory, was not permitted to vote other than by absentee ballot by direction of the superintendent. The medical certificate required by *N. J. S. A.* 19 :57–18 did not certify that he was *unable* to cast his ballot at the polling place. This regulation by the superintendent was undoubtedly as a safeguard for the health of others, as well as for the welfare of the patient, but is illustrative of the authority exercised by the hospital regardless of the provision of the election law as it applies to absentee balloting.

The rule laid down in the case of *Brueckmann v. Frignoca,* *supra,* which, incidentally, concerns tubercular patients in the Passaic County Sanatorium, applies equally to Mr. Haker as it does to Mr. Parker. This rule is:

" 'The residence required in the laws of this state, to entitle a person to vote at an election, means his fixed domicile or permanent home; and is not changed or altered by his occasional absence, with or without his family, if it be *animo revertendi.* A residence in law, once obtained, continues without intermission until a new one is gained.' *Cadwalader v. Howell,* 18 *N. J. L.* 138.

" 'Persons who are in hospital for the purpose of obtaining medical treatment do not thereby obtain a residence in such hospital so as to entitle them to be registered as living or residing therein. The purpose is a temporary one, and no residence can thereby be acquired.' 10 *Am. & Eng. Encyl. L. p.* 601." (9 *N. J. Misc.,* at *page* 129)

There are many tuberculosis sanatoriums at various locations in the State, some of which are maintained by the State of New Jersey, with the costs of maintenance of the individual patients charged to the county from which the patient was admitted. Surely, it cannot be seriously argued that if an employee who made his home with his employer was admitted to such a state institution for the purpose of treatment, he could thereupon declare the hospital as his residence merely because his employer thereafter either terminated his employment or moved away from the municipality in which he then resided. The mere fact that he could, or might, be discharged from the hospital does not alter the situation. He is still a temporary resident for the specific purpose of treatment. The status is not any different because the municipalities are located within the same county.

I find that the votes cast by Mr. Haker and Mr. Parker at the General Election on November 3, 1959, and which were received and counted in the second ward of the City of Northfield, were illegal. Furthermore, that since the said two votes were received and counted for Mr. Jacob B. Kisselbach, one of the candidates for the office of councilman from said ward, that his total vote is reduced by that number

to a net result of 400. This is sufficient to change the result, inasmuch as Mr. Frank Perri has received a total of 401. Therefore, the certificate issued to Mr. Kisselbach is hereby annulled and adjudged void, and it is directed that a certificate of election be issued to the contestant, Mr. Perri.

This makes unnecessary any determination of the validity of the absentee ballot cast by Mrs. Clara E. Presgrove. It would appear that the mark on the certificate which was attached to the outer envelope of the ballot wherein it indicated that she would be unable to attend at the polling place on Election Day because it was a religious holiday, was pure error. Her original application, wherein she applied for an absentee ballot, indicated that her reason for seeking such ballot was because she would be out of the State on Election Day, which fact was clearly explained by testimony that her daughter, who lived in Philadelphia, expected to be delivered of her child at about that date, and that she went to Philadelphia to attend her in confinement. It was further testified that her daughter delivered a child on Election Day. However, no determination is made of the validity of this ballot, since it appears unnecessary for the purpose of changing the result.

Submit order.